ARTHUR LEARY *versus* SYLVANUS C. BLANCHARD.

The secretary of an insurance company is presumed to be the official agent to carry into effect the votes and directions of those who have the management of its affairs, unless the contrary appears.

In a company, whose business is conducted by the president, vice president and secretary, subject to the direction of a board of trustees, the secretary being empowered verbally by the president and vice president, with the knowledge of the trustees, to indorse the premium notes of the company, is thereby authorized to transfer the title of a note indorsed by him.

A note indorsed by the payee, "Pay to A for account" of the payee, is open to the same defences in the hands of A, as it would be in the hands of the payee.

In such case, parol evidence is inadmisble to show that the transfer was absolute.

ON REPORT. ASSUMPSIT upon a promissory note for $801,25, dated Nov. 3, 1855, signed by the defendant and one Smith, since deceased, payable in twelve months from its date.

The principal facts are stated in the opinion. The plaintiff proved (subject to the decision of the Court upon the admissibility of the evidence) that the note was transferred to the plaintiff for a valuable consideration; that the transfer was, and was intended to be, a transfer of all the right and title of the insurance company in and to the note, without any reverting interest to said company, and that the indorsement was not intended to be in any sense conditional or restrictive.

The only evidence of the authority of the secretary to make the indorsement, was his own testimony.

*Rand,* for plaintiff.

The only question raised by defendant in this case, is upon the nature and effect of the indorsement, the authority of Tracy, the secretary, to make it being admitted.

The defendant contends, that the indorsement is restrictive, and that the plaintiff cannot maintain any action upon the note.

But, even if the indorsement should be considered a restrictive one, the plaintiff took the *title* to the note sufficiently to maintain an action thereon. The only effect of the restriction would be to open to the defendants any defence they could make against the insurance company. Story on Prom. Notes, § 138, &c.

But the indorsement cannot be considered as a restrictive one. The intention to make a restrictive indorsement is not to be presumed from equivocal language. Story on Prom. Notes, § 145. And, in this case, the particular meaning and the particular object in using the words of the indorsement, cannot be considered as so clear and certain upon their face, as to enable any Court to speak with full confidence upon their construction. The meaning and object of the words used, cannot be regarded as uncertain. And it is, manifestly, a case of a *latent ambiguity,* to explain which, parol testimony is admissible. And all the testimony in the case proves most clearly, that the transfer of the note from the insurance company to the plaintiff was absolute and without reserve. See Story on Prom. Notes, § 143.

The form of the indorsement is *printed* upon the note; and the fact that it is *printed,* is a circumstance showing that it is the usual form of the insurance company for transferring their notes. And, certainly, it is not to be presumed that the insurance company made only restrictive indorsements and transfers of their notes.

In *Sigourney* v. *Lloyd,* 8 B. & Cress., 622, the indorsement was—"pay to B, or order, *for. my use.*" And the same form was used in *Wilson* v. *Holmes,* 5 Mass., 543. And in most of the cases in the books, the words used are *"for my use."*

And in such cases, the meaning of the words is apparent; and the indorsements were held to be restrictive.

In *Treuttel* v. *Barandon,* 8 Taunt., 100, the indorsement was, " pay *for our account ;*" and the indorsee was admitted to testify that he received the bill only as an agent for the indorser. Parol testimony being in this case received in explanation of the meaning of the words used in the indorsement.

It is submitted that the meaning of the words used in the indorsement, " for account of the A. M. Ins. Co.," is uncertain and ambiguous; and the parol evidence in the case is admissible and necessary in explanation.

But, even if the indorsement be restrictive, no demand for the return premium has been *filed in set-off ;* and, consequently, no such claim can be deducted from the note sued, even if defendant can set up against plaintiff any defence he has against the insurance company.

In any event there is a balance due to the plaintiff.

*Shepley & Dana,* for defendant.

I. There is no proof that Tracy was authorized to make the indorsement. The authority of the board of trustees, or of any other party, to bind the company, by giving or indorsing notes, is not shown. The indorsing of the premium notes of an insurance company is not one of the legal incidents of its existence, as is the indorsement of business paper in the case of a bank. The law does not presume that, with insurance companies, notes are to be indorsed without some authority for it in their charter. Until the Court has seen the charter, it is impossible to say whether or not, attempted indorsements are made in conformity with that; and it is the duty of the party, claiming under an indorsement, to show that it was legally made.

It is admitted that, where an authority is conferred by parol, the agent himself is competent to prove it, *but not to prove the power of his constituent to give that authority.* That must first be shown *aliunde.*

II. But if the Court are of opinion that Tracy was authorized to make the indorsement, still this was a restricted indorsement, and did not authorize the plaintiff to bring suit on it.

"A holder who takes a bill, the circulation of which is restricted by a restrictive direction and indorsement, cannot sue the drawer or acceptor upon it, but holds the bill or the money raised by him, as the trustee of the restraining party making the restrictive indorsement. *For such words cannot be intended as a mere private direction* to the immediate indorsee, for he is bound to account for the bill without any such direction. Byles on Bills, § 121, 3d ed.; *Sigourney* v. *Lloyd*, 8 B. & C., 622, affirmed in Exch., 5 Bing., 575.

III. This contract (indorsement) was made in ordinary and popular language, to which no local or technical and peculiar meaning is attached, and parol evidence is not admissible to show that, in this particular case, the words were used in any other than their ordinary and popular sense. 1 Greenl. Ev., § 295.

It was not competent for plaintiff, therefore, to show, by Tracy, or in any other way, under the objections of defendant, that the written indorsement, made at the time, did not express the terms of the transfer.

In a precisely similar case, before Judge Pierpont of the Superior Court of New York, it was held that the plaintiff could not maintain the action.

No such title to the note, therefore, is in the plaintiff, as will enable him to bring a suit on it in his own name; and, hence, there was no necessity for defendant to file his claim for return of premium in set-off.

The opinion of the Court was drawn up by

TENNEY, C. J.—The note in suit, dated Nov. 3, 1853, payable to the "Atlas Mutual Insurance Company," in twelve months from date, and indorsed—"pay to Arthur Leary, or order, for account of the Atlas Mutual Insurance Company," and signed by George H. Tracy, secretary, was given for the

premium of insurance on the ship "Detroit," made at the time of the date of the note. The indorsement was made as early as January 26, 1856. The company suspended payment of losses, and its effects went into the hands of a receiver before the maturity of the note. The policy, for which the premium note was given, was surrendered to the receiver of said company by the defendant and his partner, since deceased, and cancelled on March 26, 1856, and during the life of the policy. The amount of the return premium due from the company, to the defendant and his partner, on said surrender, was the sum of $486,57.

Two questions are presented in this case.—1. Has the note been indorsed, so that the action can be maintained against the defendant's objection? 2. If the action can be maintained, was the indorsement restrictive, so that the defence, which would be open in an action in the name of the payees, can be available in this suit?

The secretary of an insurance company is the officer whose duty it is to make and keep the records; and is the official agent to carry into operation the votes and the directions generally of those who have the management of its affairs, unless the contrary in some manner appears.

In the Atlas Mutual Insurance Company, the president, vice president, and secretary were the officers by whom its business was conducted, subject to the direction of the board of trustees, who kept a record of their own acts. Although the secretary was not authorized by any vote of the board of trustees to make the indorsement on the note, he was empowered verbally by the president and vice president, with the knowledge of the trustees, to indorse the premium notes of the company. It does not appear that the board of trustees withheld its consent to this direction. The indorsement being made before the suspension of payment of losses and the appointment of the receiver, the defendant can make no objection thereto. *Cooper* v. *Curtis*, 30 Maine, 488.

2. The indorsement is the same in terms with that referred to in the case of *Truettel* v. *Barandon*, 8 Taunton, 100,

which was an action of trover for two bills of exchange, against a person who was the indorsee of the bills, and who deposited them as security for cash advanced to the indorser by the defendants in the action. The question was, whether the defendants did not take the deposit with sufficient notice that the bills did not belong to him? And the Court answered this question in the affirmative, and the plaintiff was allowed to prevail. But the Court noticed a distinction between such a case, and one where the deposit was by way of discount. And it was said, by Burrough, J.—"if the bills had been discounted, and the money received, the amount would have been immediately entered into the account. But, deposited as they were, had they failed, their amount would have been struck out. The bills, therefore, did not form a real item in the account."

In the case at bar, the note was applied, not as security for an indebtedness of the indorser, but to the payment of notes of the company. It was, as between the parties to the indorsement, similar to a discount for cash, and paid over to the indorsers. The indorsement, by its terms, was restrictive, and the ordinary and popular sense cannot be changed by parol evidence. 1 Greenl. Ev., § 295.

Upon the facts of the case, which are admissible in evidence, the action may be maintained. But the same defence is open which would have been allowed, if the action had been for, and in the name of the payees of the note. Since the note was given, a part of the consideration therefor has failed. For the balance, with the interest thereon, since the maturity of the note, judgment should be entered in favor of the plaintiff.

Rice, Appleton, Goodenow, Davis and Kent, JJ., concurred.