COMMERCIAL NAT. BANK OF CINCINNATI *v*. HAMILTON NAT. BANK OF FT. WAYNE.

*(Circuit Court, D. Indiana. July 15, 1890.)*

BANKS AND BANKING—COLLECTIONS—PAYMENT.
    An indorsee for collection for account of a prior indorsee for collection is liable to the owner of the draft for the amount collected, and not remitted to the owner or the prior indorsee, though credit for the amount was given the latter, and he charged the collector, and credited the owner, and was charged for the same by the owner, and though the collector, by virtue of an agreement with its indorser, whereby the amount due from one to the other for collections was to be placed to the latter's credit with a certain bank, wrote to that bank to place the amount to the credit of the prior indorsee, which order it could have countermanded after no tice of the latter's failure.

At Law.
*Lawrence Maxwell* and *Morris & Barrett*, for plaintiff.
*Bell & Morris*, for defendant.

GRESHAM, J. In April, 1884, the plaintiff sent to Fletcher & Sharp, bankers at Indianapolis, a draft indorsed: "Pay to the order of Fenton, for collection, on account of Commercial Bank." Fenton was Fletcher & Sharp's cashier, and the draft was sent to them in pursuance of an arrangement entered into in 1883, whereby Fletcher & Sharp were to make collections for the plaintiff, and remit balances on the 1st and 15th of each month. Fletcher & Sharp indorsed the draft: "Pay to the order of John Mohr, Jr., cashier, or order, for collection, for account of Fletcher & Sharp,"—and sent it to the defendant, whose cashier John Mohr was, at Ft. Wayne. The defendant collected the draft on July 10, 1884, and the same day credited Fletcher & Sharp with the proceeds, $3,497.49, and advised them of the fact. On receipt of this advice, July 11th, Fletcher & Sharp charged the defendant, and credited the plaintiff, with the amount, and notified the latter. This notice was received by the plaintiff July 12th, when it charged Fletcher & Sharp. On July 15th the defendant posted a letter at Ft. Wayne, addressed to Winslow, Lanier & Co., bankers at New York, directing them to credit Fletcher & Sharp with the amount collected. At this time, and for several years previous, the defendant and Fletcher & Sharp had made collections for each other under an arrangement whereby any amount due from one to the other was placed to the latter's credit with Winslow, Lanier & Co., with which banking firm both kept accounts; but the plaintiff had no knowledge of

this arrangement. The defendant in good faith directed that the credit be given to Fletcher & Sharp in New York, not knowing that they were indebted to Winslow, Lanier & Co. Fletcher & Sharp failed, and ceased to do business, on July 14th, which failure was announced in the evening papers of Ft. Wayne the next day, after banking hours, not, however, until after the defendant had posted the letter of instruction to Winslow, Lanier & Co. This letter was received in New York on July 17th. The defendant knew of the failure of Fletcher & Sharp on July 16th; and, although it had ample time to have done so, it failed to countermand the order sent by mail to the New York banking firm. On July 25th the plaintiff addressed a letter to the defendant, claiming the collection, and demanding that it be remitted. The demand was refused, and this suit was brought to recover the amount.

The indorsement to Fletcher & Sharp "for collection" authorized them and their indorsee to collect the draft for the owner, the plaintiff. Fletcher & Sharp received the draft for collection, and for no other purpose, and the restrictive character of the indorsement informed the defendant that the title remained in the plaintiff, and that it would own the proceeds when collected. The defendant became a mere subagent of the plaintiff for collection, with no more right to pay the proceeds to Winslow, Lanier & Co. than Fletcher & Sharp would have had if they had made the collection. Fletcher & Sharp acquired no property in the draft, and they passed none to the defendant. The defendant, as subagent or trustee of the plaintiff, was bound to send the proceeds to it directly, or through Fletcher & Sharp. It did neither. The defendant claims that the placing of the amount of the collection to the credit of Fletcher & Sharp on the books of Winslow, Lanier & Co., the charging of the same amount against the defendant by Fletcher & Sharp, the crediting by them of the plaintiff with a like amount, and the charging of Fletcher & Sharp by the plaintiff, amounted to a payment by the defendant to the plaintiff, through Fletcher & Sharp; that the defendant should not be required to pay the money again; and that the draft and its proceeds were, in all respects, treated in accordance with long and well established custom and usage among banks and bankers. The plaintiff's indorsement upon the draft was plain, and its legal force cannot be defeated by resort to usage or custom, or by any method of bookkeeping. *Sweeny* v. *Easter,* 1 Wall. 173; *Bank of the Metropolis* v. *First Nat. Bank of Jersey City,* 19 Fed. Rep. 303; *Bank* v. *Armstrong,* 39 Fed. Rep. 684; *First Nat. Bank* v. *Reno Co. Bank,* 3 Fed. Rep. 257; *Blaine* v. *Bourne,* 11 R. I. 119; *Bank* v. *Hubbell,* 22 N. E. Rep. 1031; Pars. Notes & B. § 143. In discussing the effect of indorsements of this character, the supreme court, in *White* v. *Bank,* 102 U. S. 658, said:

"The language of the indorsement is without ambiguity, and needs no explanation, either by parol proof, or by resort to usage. The plain meaning of it is that the acceptor of the draft is to pay it to the indorsee for the use of the indorser. The indorsee is to receive it on account of the indorser. It does not purport to transfer the title of the paper, or the ownership of the money when received. Both these remain, by the reasonable and almost nec-

essary meaning of the language, in the indorser. * * * If this be a sound view of the legal effect of the written indorsement, neither parol proof nor custom can be received to contradict it."

Instead of sending the money directly to the plaintiff, or through Fletcher & Sharp, the defendant sent it to Winslow, Lanier & Co., in New York, not for the plaintiff, but to the credit of Fletcher & Sharp. It was a violation of the plain terms of the plaintiff's indorsement to thus treat the draft and its proceeds as the property of Fletcher & Sharp. The defendant sent no money to New York to be credited to Fletcher & Sharp. It simply instructed Winslow, Lanier & Co., by letter, to charge it, and credit Fletcher & Sharp with an amount equal to the collection; and, if the letter of instruction left Ft. Wayne before the defendant knew of the failure of Fletcher & Sharp, the defendant knew of the failure in ample time to have sent a dispatch countermanding the instruction. Finding and judgment for the plaintiff for the amount collected, with interest.